Case No. 14-3183
Case No. 14-3222
_____

TENTH CIRCUIT COURT OF APPEALS
_____

**RACHEL KANNADAY**
Plaintiff/Appellant/Cross-Appellee

v.

**GEICO INDEMNITY INSURANCE COMPANY**
Garnishee Defendant/Appellee/Cross-Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Honorable J. Thomas Marten, United States District Judge

District Court Case No. 12-cv-2742-JTM
_____

**APPELLANT'S PRINCIPAL BRIEF**


Kathryn M. O'Shea, KS #23583
Hasty & Associates, LLC
7101 College Blvd., Suite 350
Overland Park, KS  66210
Telephone:   (913) 317-8068
Facsimile:     (913) 317-8058
koshea@hastyassoc.com

**ATTORNEY FOR
PLAINTIFF/APPELLANT/
CROSS-APPELLEE**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Table of Authorities**…..iii

**Statement of Prior or Related Appeals**.....iv

**Jurisdictional Statement**.....1

**Statement of Issues Presented for Review**…..1

**Statement of the Case**…..2

**Summary of Argument**.....20

**Argument**.....23

    I.    The district court erred in finding that GEICO had acted in good faith in defending the insured and in conducting settlement negotiations…..23

        A.    Standard of Review…..23

        B.    Discussion.....24

            1.    Conflict of Interest.....25

            2.    Breach of Duty of Good Faith.....27

    II.    The district court erred in finding that GEICO had acted with reasonable care in defending its insured and in negotiating settlements…..36

        A.    Standard of Review…..36

        B.    Discussion…..36

    III.    The district court erred in failing to recognize and apply the Kansas judgment rule to the present action…..40

A.    Standard of Review…..40

B.    Discussion…..41

IV.    The district court erred in finding that the Administrator

breached the policy by failing to cooperate, relieving GEICO of

responsibility…..45

A.    Standard of Review…..45

B.    Discussion…..46

V.    The district court erred in refusing to enter judgment

in favor of Kannaday, including post-judgment interest,

pre-judgment interest and attorneys' fees…..49

A.    Standard of Review…..49

B.    Discussion…..49

**Conclusion**…..50

**Oral Argument Requested**…..51

**Certificate of Compliance**…..51

**Certificate of Digital Submission**…..52

**Certificate of Service**…..53

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Associated Wholesale Grocers, Inc. v. Americold Corp.*, 934 P.2d 65 (Kan. 1997)….21, 36, 46

*Blann v. Rogers*, Case No. 11-2711-CM, 2014 WL 2048175 (D. Kan. May 19, 2014)…..33, 39

*Bollinger v. Nuss*, 449 P.2d 502 (Kan. 1969)…..24-29, 33, 35, 37, 39-40, 44

*Boone v. Lowry*, 657 P.2d 64 (Kan.App. 1983)…..22, 46

*Coleman v. Holecek*, 542 F.2d 532 (10th Cir. 1976)…..20, 24-26, 47

*Covill v. Phillips*, 452 F.Supp. 224 (D. Kan. 1978)…..25, 29

*Dahlin v. State Farm Mut. Auto. Ins. Co.*, Case No. 02-2272-CM, 2003 WL 22594412 (D. Kan. Sept. 26, 2003)…..23

*DeMarco v. Travelers Ins. Co.*, 26 A.3d 585 (R.I. 2011)…..32

*Farmers Ins. Exchange v. Schropp*, 567 P.2d 1359 (Kan. 1977)…..22, 24, 33-37, 39-41, 44-45

*First Hays Banshares, Inc. v. Kansas Sur. Co.*, 769 P.2d 1184 (Kan. 1989)…..22, 49

*Glenn v. Fleming*, 799 P.2d 79 (Kan. 1990)…..25, 30, 34-36, 44

*Holdeman v. Devine*, 572 F.3d 1190 (10th Cir. 2009)…..23-24, 36, 40, 45, 49

*Kannaday v. Ball*, 234 P.3d 826 (2010)…..43

*Kannaday v. Ball*, No. 09-2255-JWL, 2010 WL 2346368 (D. Kan. June 9, 2010)…..10

*Levier v. Koppenheffer*, 879 P.2d 40 (Kan.App. 1994)…..24, 33-34

*Liberty Mut. Ins. Co. v. Davis*, 412 F.2d 475 (5th Cir. 1960)…..31, 39

*Rector v. Husted*, 519 P.2d 634 (Kan. 1974)….24-26

*Pistalo v. Progressive Cas. Ins. Co.*, 983 N.E.2d 152 (Ind.App. 2012)…..43-44

*Roberts v. Printup*, 595 F.3d 1181, 1190 (10th Cir. 2010)…..28

*Smith v. Blackwell*, 791 P.2d 1343 (Kan.App. 1990)…..49

*U.S. v. Ryans*, 903 F.2d 731 (10th Cir. 1985)…..48

*U.S. v. Windrix*, 405 F.3d 1146 (10th Cir. 2005)…..46

*Venn v. St. Paul Fire and Marine Ins. Co.*, 99 F.3d 1058 (11th Cir. 1996).....31-32

*Wade v. EMASCO Ins. Co.*, 483 F.3d 657 (10th Cir. 2007)…..13

*Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 298 P.3d 250 (Kan. 2013)…..46

## Statutes

28 U.S.C. § 1332…..1

28 U.S.C. § 1291….1

K.S.A. 40-908……50

K.S.A. 59-2239…..9, 42, 44, 47

## PRIOR OR RELATED APPEALS

1. *Rachel Kannaday, Appellee, v. Charles Ball, Special Administrator of the Estate of Stephanie Hoyt, Deceased, Appellant*, Case No. 102359 (Kan. App.);

2. *Rachel Kannaday, Appellant, v. Charles Ball, Special Administrator of the Estate of Stephanie Hoyt, Deceased, Appellee*, Case No. 108474 (Kan. App.).

## JURISDICTIONAL STATEMENT

The jurisdiction of the district court was proper as a result of diversity of citizenship and amount in controversy.  28 U.S.C. § 1332.  The jurisdiction of this Court is proper.  28 U.S.C. § 1291.  Rachel Kannaday timely appeals from the district court's order and judgment (Aplt. App. 1167-1703) for garnishee defendant/appellee/cross-appellant GEICO.  Fed. R. App. P. 4(a)(1)(A).  The order and judgment to be reviewed (Aplt. App. 1167-1703) were entered on August 29, 2014.  Kannaday's Notice of Appeal was filed on September 4.  *Id*. at 1704-05.  This appeal is from a final order/judgment that disposes of all claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.     The district court erred in finding that GEICO had acted in good faith in defending the insured and in conducting settlement negotiations.

II.    The district court erred in finding that GEICO had acted with reasonable care in defending its insured and in negotiating settlements.

III.   The district court erred in failing to recognize and apply the Kansas judgment rule to the present action.

IV.   The district court erred in finding that the Administrator breached the policy by failing to cooperate, relieving GEICO of responsibility.

V.    The district court erred in refusing to enter judgment in favor of Kannaday, including post-judgment interest, pre-judgment interest and attorneys' fees.

## STATEMENT OF THE CASE

This action arose out of an automobile accident in which Kannaday was injured while in a vehicle driven by Stephanie Hoyt, deceased (Aplt. App. 1668). Kannaday pursued a lawsuit in state court against the Hoyt Estate's Administrator, which resulted in judgment in favor of Kannaday. *Id*. at 30-55. Kannaday pursued garnishment and GEICO removed to federal court. *Id*. at 15-29.

On July 13, 2005, in Kansas, Hoyt attempted to make an improper U-turn on Interstate 35 (Aplt. App. 1668, 3353). Her vehicle was struck by a semi-truck; she was killed. *Id*. Hoyt's passengers, Genevie Gold, Sharon Wright, and Kannaday, were seriously injured. *Id*. at 1668. Hoyt was insured by GEICO. *Id*. at 2586-2610. GEICO's liability policy contained bodily injury limits of $25,000 per person; $50,000 per accident (Aplt. App. 2587). GEICO was notified of the accident and the claim file was assigned to Kwirt Roarick, who had one year experience handling significant injuries as a continuing unit examiner (Aplt. App. 2444).

By August 11, 2005, GEICO's examiner knew the accident was Hoyt's fault and that each of the injured passengers had "catastrophic injuries" and were entitled to reasonable compensation in excess of $25,000 (Aplt. App. 1735, 2458-59, 2466, 2468, 2476, 2482-83 769). GEICO made no offer to any injured passenger at that time (Aplt. App. 2466, 2468, 2483). Roarick thought about what underinsured motorist limits applied to each passenger (Aplt. App. 2468-69). Within one month of the accident, GEICO was notified that Kannaday's hospital bill was almost $150,000 (Aplt. App.

2

1735, 2483).  Contrary to his training, Roarick did not report to home office that

Kannaday's bills exceeded $30,000 (Aplt. App. 1803-04).

    Gold retained attorney Doug Greenwald to represent her on her claim (Aplt. App.

2473).  On October 5, 2005, Greenwald proposed to GEICO that the $50,000 "per

accident" limit be split equally amongst the passengers, with each getting one-third (Aplt.

App. 2472-74, 2509-10, 3347).  Roarick did not document this settlement offer in the

claim diary, even though GEICO required him to do that (Aplt. App. 2444, 2480, 2509-

10, 2513, 4824, 4850-51).  GEICO's training is that examiners are to timely respond to

offers in order to act in good faith (Aplt. App. 2512).  GEICO never responded to Gold's

offer (Aplt. App. 1742, 2411, 2513).  GEICO didn't inform the Estate or the other

passengers of Gold's proposal (or make the offer to the passengers to see if they would

take it) (Aplt. App. 1743-44, 1748).

    Roarick did not request authority to settle until November 4, 2005 (Aplt. App.

2486).  On November 4, Roarick offered Kannaday and Wright $12,500 (Aplt. App.

2470-71).  GEICO made offers based on Roarick's belief that Wright and Kannaday

could file for "supplemental" benefits under their own underinsured motorist (UIM)

coverage (Aplt. App. 2476).  In response to Gold's proposal that the $50,000 be split

three ways, GEICO offered her more than she demanded (Aplt. App. 2476).  Gold was

offered $25,000 because Roarick thought Gold did *not* have UIM coverage (Aplt. App.

2476-77, 2490-91, 2514).  In handling the claim file, GEICO's examiners considered

how to get as much money as possible to each *claimant* (Aplt. App. 1744-45, 2476).

GEICO's examiner has never seen an insurer offer a claimant more than the amount

demanded and that is not what GEICO trained its examiners to do (Aplt. App. 1747, 1769).

GEICO's duty to its insured was to secure a signed release to protect the insured in exchange for a settlement offer; the duty has nothing to do with whether a claimant had more coverage available or whether GEICO paid PIP benefits (Aplt. App. 1732, 2481, 2492-93, 1901, 1908, 4824, 4849-50).

Roarick was mistaken; Wright and Kannaday did *not* have UIM coverage under the law in Kansas (Aplt. App. 2477-78). GEICO's own Hoyt policy contained that Kansas law (Aplt. App. 2494). GEICO required Roarick to be familiar with Kansas law and its Kansas policies because he handled Kansas claims (Aplt. App. 2480, 2494). Roarick documented this error in the claim diary, but although the file was to be routinely reviewed by the supervisor, no one talked to him about evaluating the claims based on whether claimants had UIM coverage and no one corrected his mistaken determination that Wright and Kannaday had UIM coverage (Aplt. App. 1749, 2489-91, 2494, 2500-01, 2505-06). Although Gold was offered more than Wright or Kannaday, GEICO never had any information that she had the worst injury; GEICO learned *Kannaday* was the most seriously injured (Aplt. App. 1856-57, 2052, 2507-08, 3180).

On November 11, 2005, GEICO transferred the claims file to Sabrina Brantley for handling, although she was unfamiliar with Kansas claims and had no experience handling significant injury claims (Aplt. App. 1750, 1905, 2471-72). Brantley didn't know how to handle a claim where the insured had died (Aplt. App. 1800). GEICO trained Brantley that she was to investigate the facts of liability and investigate the nature

4

and extent of claimants' injury, without regard to policy limits, and evaluate the liability
information (Aplt. App. 1724-25). Brantley was to negotiate settlements and act in the
best interests of and protect the insured (Aplt. App. 1727, 1730). GEICO trained
Brantley that once she determined the insured was liable and she had sufficient
information to determine damages, the claim was ripe for settlement; she did not have to
determine all of the medical expenses to evaluate the case at limits (Aplt. App. 1730,
1732). It was Brantley's duty to settle if she had the opportunity to settle, commiserate
with injury; she was to always take the initiative on settlement (Aplt. App. 1733).
Brantley was able to evaluate Kannaday's injury at $25,000 because she knew Kannaday
had an incomplete spinal cord injury and had spent months in hospitals (Aplt. App.
1735). Brantley did not evaluate what was reasonable compensation for Kannaday
because she knew it was more than $25,000 (Aplt. App. 1737-1739). Brantley knew that
even if Kannaday had UIM coverage, if GEICO did not obtain a release from Kannaday,
to protect its insured, the UIM carrier could have made a claim against the Estate (Aplt.
App. 1752). The hospital informed Brantley that it would reduce its lien to $6,250, but
would not release Wright or Kannaday from personal liability (Aplt. App. 1881-83).
Brantley told Wright and Kannaday about the lien reduction, but did not tell them they
would still be personally liable (Aplt. App. 1910-11, 3873).

Kannaday, after meeting with a family member, consulted attorney Paul Hasty.
*Id*. at 2413-14. Hasty provided Kannaday with advice and wrote letters to GEICO on her
behalf, at no charge. *Id*. at 2414-15. Had the claim settled as a result of Hasty's
correspondence, Kannaday would not have owed an attorney fee. *Id*. at 2415. On

5

January 19, 2006, Kannaday (through Hasty) made a settlement offer of $25,000, which, had it been accepted, would have gotten the insured a release. *Id*. at 1754, 3349. Although the letter demanded an immediate response, GEICO did not respond to Kannaday's settlement demand until February 22, when GEICO rejected the offer and reoffered Kannaday $12,500 based on the same evaluation regarding the error concerning UIM coverage. *Id*. at 1765, 1788-89, 1857, 2000-01, 2037, 3351, 3183-85.

Upon receipt of Kannaday's policy limit demand of January 19, GEICO hired attorney Lyndon Vix to represent GEICO in settling the claims against the Estate (Aplt. App. 1769-70, 1886-88, 1895). On January 26, Vix recommended an interpleader be filed instead of negotiating settlements because that was in the best interests of GEICO; the interpleader would not provide the insured with any releases (Aplt. App. 1770, 1765-66, 1858, 1917-19, 1979-1981, 1954, 1997-98, 3182-83, 4824, 4837-38, 4931, 4984, 4986, 5007). Vix advised GEICO to file the interpleader before the injured passengers released the Estate because if any of the claimants were to file suit or accept an offer previously made to them, "it would definitely complicate matters" (Aplt. App. 1772-73, 1858-59, 3182). Gold didn't accept the offer of $25,000 until February 2006. *Id*. at 2001-02. Without informing Hoyt's father, Brantley pursued the interpleader because she thought it would resolve the claims against the Estate; she learned she was wrong about that (Aplt. App. 1766-67, 1771, 1773, 1776-78, 1792, 1898, 1899-1900, 1955, 4824, 4837-38). Contrary to GEICO's training as set forth in the claims manual, the examiners quit trying to settle the claims, they left the Estate exposed to judgment, and

judgment was later entered against the Estate (Aplt. App. 1775, 1819-20, 1822-24, 1829-30, 1847, 1850-51, 1856-57, 1917-19, 1925-27, 2043-44, 4824, 4852, 4869-70, 4927).

Brantley did not realize Vix represented *GEICO* in the interpleader (not the Estate), although she had a copy of the complaint (Aplt. App. 1777-80). Contrary to her training as set forth in the claims manual, Brantley did not consider the best interests of the Estate in pursuing the interpleader; she knew nothing about interpleaders (Aplt. App. 1777-80, 1784, 1789, 1792, 1811-13, 1815-16, 2625-26). During the time period that Roarick and Brantley handled the claim file, Wright never made a claim, she never responded to the offer of $12,500, and she did not make a claim against the funds of the interpleader (Aplt. App. 1756, 1919, 2014-15). Therefore, by offering Gold $25,000 (when she would have taken $16,666.67) and Kannaday $12,500 and Wright $12,500, GEICO could've saved itself $12,500 (Aplt. App. 1759-61, 1761-1764).

On February 24, 2006, *before* the interpleader was filed, Kannaday made another policy limit demand (Aplt. App. 1805-07, 2018 3185). It was not accepted, GEICO did not communicate with Kannaday's attorney about the offer, and it was withdrawn days later (Aplt. App. 1807-08, 2018-19, 2035-37). Thereafter, GEICO did not request an extension or try to offer $25,000 to Kannaday. *Id.* Through the interpleader, the hospital received $25,000 and the Estate did not receive a release. *Id.* at 2033-35. Kannaday and Hasty executed an attorney employment contract on February 25, 2006. *Id.* at 2414-15, 3621-22.

Counsel for GEICO knew that if he needed a personal representative of the Estate, there was a mechanism for appointing one. *Id.* at 1917-18, 2139-40. The District Court

7

of Wyandotte County, Kansas appointed Charles Ball the personal representative of the Estate. *Id*. at 1720, 1991-92, 2061-62, 2184, 2186, 3365-66, 3399-3418.

Kannaday filed a tort suit against the Estate's Administrator, in the District Court of Wyandotte County, Kansas, in excess of the policy limit, and GEICO asked Vix, the attorney representing GEICO, to also (at the same time) defend the insured Estate. *Id*. at 1775-76, 1789-90, 1792, 1804, 1955, 3353-54, 3399. Contrary to her training as set forth in the claims manual, Brantley consulted with Vix, who represented GEICO and the insured at the same time; she did not report the excess claim to her superior or home office or the insured's Administrator "because of how it was set up" and she thought a bad faith claim was coming. *Id*. at 1781-82, 1787, 1790, 1794, 1802-04, 1832-33, 1834-37, 1840-43, 2985, 3040. GEICO trained Brantley (as set forth in the manual) that if there is a claim against its insured in excess of the policy limit, there is a conflict between GEICO and the insured. *Id*. at 1785-87. She didn't think there was a conflict between GEICO and the Estate and she thought the attorney would tell her if there *really* was a conflict; Vix did not. *Id*. at 1790, 1837-40, 1847, 1928-30, 2115-18, 2181-83. A waiver of a conflict was not obtained from the insured or GEICO. *Id*. at 2042-43. Contrary to GEICO's training as set forth in the manual, in the same Hoyt claim file, GEICO's agents documented the handling of the claim against the insured and noted the merits of a bad faith claim by the insured and coverage defenses (Aplt. App. 1842-43, 1847-49, 3040, 3083-91, 3368-69, 4824, 4846-47, 4897-98, 4903-04, 4832-34, 4941-42, 4946-50).

Kannaday made a settlement offer of $500,000 and it was rejected (Aplt. App. 1932). On August 30, 2006, Kannaday's counsel provided Vix with a proposed

settlement agreement that included a release. *Id*. at 1934, 3316-3321. Vix provided the

agreement to the Administrator and he signed it and returned it to Vix on September 20,

but counsel did not forward it to Kannaday's counsel because counsel did not know what

Ball's intent was (Aplt. App. 1932-1937, 2063-64, 2236, 3320). Counsel held the signed

settlement agreement in counsel's file for over a year while the Administrator thought the

case had settled. *Id*. at 2173-74. Counsel *did* provide a copy of the executed agreement

to GEICO and GEICO's examiner did not think it was in the best interests of GEICO;

GEICO's examiner knew that counsel was holding the executed agreement in counsel's

file. *Id*. at 4824, 4855-58, 4862, 4864.

Administrator Ball signed the settlement agreement because he was concerned

about protecting after-acquired assets of the Estate; the attorneys representing the Estate

(and GEICO) thought his concern was invalid and would've set up a bad faith claim

against their other client (GEICO), who they were taking direction from in representing

the Estate. *Id*. at 1934-1942, 1947-48, 1991-92, 2058, 2062, 2064-66, 2111, 2161, 2186-

93, 2207-08, 2210-13, 2220-22. The Administrator is not experienced in bad faith

litigation. *Id*. at 2223-24, 2248.

The District Court of Wyandotte County, Kansas overruled Vix's motion for

summary judgment arguing the 6-month period set forth in the Kansas non-claims statute,

K.S.A. 59-2239(1), barred Kannaday's suit against the Estate's Administrator (Aplt. App.

1930-31, 2005). Thereafter, William Townsley, of the same firm, took the lead in

handling the insured's defense. *Id*. at 2039-40. Kannaday deposed Administrator Ball

and he signed another copy of the settlement agreement during the deposition (Aplt. App.

9

1935-36, 2203-04).  At the deposition, Townsley appeared by telephone as the Administrator's attorney.  *Id*. at 2065-67, 2152-53.  Thereafter, Kannaday served a request for production for the initial executed settlement agreement.  Townsley did not produce it until March 28, 2008, after Kannaday's attorney discussed filing a motion to compel.  *Id*. at 2174-75.

Pursuant to the settlement agreement the Estate's Administrator entered, an ex parte hearing attended by Hasty occurred and judgment was entered in favor of Kannaday in the amount of $7,219,064.37.  *Id*. at 1151, 1156-57, 1943, 2162, 2174-76, 3317. GEICO never told the Administrator that it would refuse to pay any judgment against the Estate; it has not paid the judgment.  *Id*. at 1997, 4824, 4876-78.

Kannaday pursed a garnishment action against GEICO which GEICO removed to federal court, Case No. 09-cv-2255 (D. Kan.).  In the garnishment action, Kannaday sought to recover from GEICO the excess of the judgment over GEICO's policy limits on the basis that GEICO acted negligently or in bad faith in defending and refusing to settle within the policy limits Kannaday's suit against the Estate.  *Kannaday v. Ball*, No. 09-2255-JWL, 2010 WL 2346368, *1 (D. Kan. June 9, 2010).  Administrator Ball was not involved in the garnishment action, other than as a witness; the Administrator was pro se, and the Estate and Kannaday were united in interest.  *Id*. at 2231.  In the garnishment action, the Administrator signed a waiver of the Administrator's attorney/client privilege at Kannaday's request.  *Id*. 2225-26, 2231-32, 2247, 4924, 4977-78.

Meanwhile, counsel for the Estate appealed the judgment of the state court, asking the Court of Appeals to set aside the settlement agreement the Estate had entered for lack

of consideration and reverse the district court's denial of summary judgment. *Id.* at 1943-45, 1994, 3518-3587, 1984. Counsel for the Estate argued on appeal that a bad faith claim by the Estate against GEICO was meritless. *Id.* at 1992, 3553-57. The Estate's Administrator didn't ask counsel to appeal, to attack the settlement the Administrator entered, or to make those arguments and his attorney did not raise the issue the Administrator was concerned about (after-acquired assets). *Id.* at 1992-94, 2102, 2110-11, 2193. Counsel told the Administrator that counsel was appealing the denial of summary judgment; counsel did not tell the Administrator that counsel was going to attack the settlement agreement (which GEICO directed counsel attack for GEICO's benefit). *Id.* at 2086-94, 2104-05, 2108-12, 2130-32, 2134-35, 2136-38, 2144-45, 2193-94, 2236-37, 3332, 3377, 3383, 3391, 3518, 4824, 4865-69, 4894-95, 4900-02, 4905-10, 4912-18, 4932-38. The Court of Appeals determined the GEICO policy is not an asset of the Estate protected by K.S.A. 59-2239(1) and the statute did not bar Kannaday's cause of action against the Estate's Administrator. *Id.* at 2021 2031-32, 3609-20. The Court of Appeals found there was no consideration for the settlement agreement and remanded for a new trial. *Id.* at 2095-96, 3620. The federal court dismissed the garnishment action without prejudice due to lack of jurisdiction after the Kansas Supreme Court declined review. *Id.* at 944.

   After the Court of Appeals ruled, GEICO tried to remove Ball as the Estate's Administrator. *Id.* at 2078-79, 2119-21, 2194-96, 4924, 4943-45, 4950-54, 4976-66, 4979. The probate court ruled GEICO's representative had to appear for a deposition in connection with that action, and GEICO then dismissed the action. *Id.* at 2195-96, 4954-

58, 4979-80.  GEICO asked the attorney for GEICO (and the Estate's Administrator) to

try to remove the Administrator, but the attorney told GEICO he couldn't do that because

the Administrator was his client.  *Id*. at 2139, 2147-50, 3391, 4924, 4976.

The tort case was tried to the District Court of Wyandotte County, Kansas where GEICO

defended the Estate, and, as GEICO and counsel for the Estate expected, an excess

judgment was entered against the Estate and it was in the amount of $4,723,368.60.  *Id*. at

2080, 2114, 2080, 3436-3447, 4824, 4848.  Kannaday appealed the Kansas statutory cap

(and later dismissed) and Townsley filed a cross-appeal in the name of the Administrator,

which he later dismissed after GEICO told him to.  *Id*. at 2081-83, 4983, 4986, 4998,

5001-02, 5004.

      The second garnishment action followed (GEICO removed to federal court) (Case

No. 12-cv-2742 (D. Kan.))  (Aplt. App. 15-55, 1151).  Kannaday was a judgment creditor

on the negligence claim, standing in the shoes of the insured Estate.  *Id*. at 24-55, 1151,

1160).  Kannaday sought to recover from GEICO the excess of the state court judgment

over GEICO's policy limits on the basis that GEICO acted negligently or in bad faith in

defending and refusing to settle within the policy limits Kannaday's suit against the

Estate.  *Id*. at 56-58, 60-63, 66-68, 71-74.  GEICO filed a motion for summary judgment,

Kannaday opposed the motion, and the district court (Judge Rogers) denied the motion.

*Id*. at 189-345, 449-536, 955-957, 972-1170.

      The court rejected GEICO's argument that plaintiff's bad faith and negligence

claims were barred by the Kansas non-claims statute.  *Id*. at 1160-65.  The court found

that in Kansas, a judgment creditor may proceed by garnishment against a tortfeasor's

insurer for the unpaid balance of the judgment which is in excess of the policy limits

where the insurer refused to settle within the limits by virtue of negligence or bad faith

and no assignment by the judgment debtor is required.  *Id*. at 1161.  The court found

GEICO's argument ran contrary to the non-claims statute.  *Id*. at 1162.  According to the

court, "Since the bad faith claim (according to the court in <u>Nichols</u>) may be seen as

arising from plaintiff's enforcement of a tort claim against the Hoyt Estate and is not

directed against the Estate's assets, the bad faith claim…should not be affected or

prevented by the operation of the non-claim statute."  *Id*. at 1163.  According to the court,

this holding is consistent with the judgment rule of Kansas.  *Id*. at 1163.  "Damages are a

required element of a bad faith claim.  <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d 657, 673

(10th Cir. 2007).  But, under the judgment rule, the judgment against the Hoyt Estate is

considered sufficient alone to demonstrate damages."  *Id*. at 1163-64.  According to the

court, a bad faith claim to recover an excess judgment may go forward even though the

insured is bankrupt or insolvent and has not and cannot pay the excess judgment.  *Id*. at

1164.  The court stated, "The judgment rule was adopted to encourage the good faith

performance of an insurance contract regardless of the financial circumstances of the

insured."  *Id*. at 1164 (citation omitted).  According to Judge Rogers, the ruling on

summary judgment was in accord with two recognized interests: (1) public

interest/encouraging settlements and (2) fairness/equalization of the contenders' strategic

advantages.  *Id*. at 1164-65.  GEICO asked the court to enter summary judgment on the

basis that the Administrator breached the duty to cooperate with GEICO and waived the

Estate's rights under the policy.  *Id*. at 1166.  According to Judge Rogers, the Kansas

Court of Appeals has held that a breach of the duty of cooperation does not relieve an insurer of its duty to perform unless the breach causes substantial prejudice to the insurer's ability to defend itself. *Id*. at 1167 (citation omitted). The court found the Estate never had a substantial likelihood of success on Kannaday's claim. *Id*. The court found it was not clear that GEICO suffered substantial prejudice from the alleged breach of the duty of cooperation. *Id*. at 1168. Thereafter, the case was transferred to Judge Marten for trial and that occurred in July 2014. (Aplt. App. 1667-1703).

The court made findings of fact and conclusions of law. *Id*. at 1667-1701. According to the court:

-   The Estate would not acquire assets in the future and the non-claims statute barred the enforcement of claims against any assets (Aplt. App. 1669, 1674).

-   GEICO paid PIP medical and funeral benefits. *Id*. at 1671, ¶¶ 16-18, 24, 37, 44.

-   In making settlement offers, examiner Roarick considered whether the claimants had UIM coverage. *Id*. at 1671-72, ¶¶ 21, 24-25, 29. The contributions to the claimants were: Hoyt received $25,000, GEICO paid Wright $25,000 in UIM benefits, and the hospital received $25,000 on its Kannaday lien. *Id*. at 1673-74, ¶ 33, 36.

-   Examiner Brantley "negotiated a lien resolution" whereby the hospital agreed to accept $6,250 of the $12,500 GEICO had offered Wright and Kannaday. *Id*. at 1674, ¶¶ 18, 34-36.

14

- When Kannaday's attorney made the policy limit demand on January 19, 2006, the attorney did not have the passengers' medical records (but Kannaday was the most injured). *Id*. at 1674-75.

- GEICO reoffered Kannaday $12,500 on February 23, 2006. According to the court, Kannaday's second policy limit demand of February 24 was not rejected; it was withdrawn too quickly (on February 27); Kannaday retained counsel on February 25. *Id*. at 1676-77, 1690.

- GEICO' agent asked attorney Vix to negotiate settlements that would distribute $50,000. Vix recommended an interpleader and GEICO agreed. *Id*. at 1675-76.

- Kannaday's attorney filed suit against the Estate's Administrator although he was not appointed until later and could not receive service. *Id*. at 1677.

- The Fleeson firm told the Administrator that the non-claims statute protected the Estate's assets. *Id*. at 1678.

- Concerned with the Administrator's actions, GEICO moved to have him removed as the sole administrator. *Id*. at 1679.

- Vix forwarded the proposed settlement agreement to the Administrator and told the Administrator he was going to file a motion for summary judgment "ensuring any recovery by the Estate would be limited to the policy proceeds." *Id*. at 1679-80.

- Judge Lampson determined no assets of the Estate could be seized to satisfy a potential judgment, pursuant to the non-claims statute. *Id*. at 1680-81.

15

- GEICO paid $75,000 to Gold and Wright, even though Wright was not entitled to UIM benefits. *Id.* at 1681-82.

- The Administrator signed the settlement agreement even though Judge Lampson ruled the non-claims statute protected the Estate's assets. *Id.* at 1682.

- The outcome of the interpleader "benefitted Kannaday by reducing the amount of the debt owed to [the hospital]." *Id.* at 1682

- The Kansas Supreme Court recognizes the use of an interpleader for disposing of policy limits where there are multiple claims. *Id.* at 1682.

- The settlement entered by the Estate was presented to the state trial court ex parte with no notice to the Estate or GEICO and judgment was entered against the Administrator. *Id.* at 1683-84.

- The Administrator signed a waiver of his attorney-client privilege. *Id.* at 1684.

- The Court of Appeals found there was no consideration for the settlement agreement because the non-claim statute protected the Estate's assets from being used to satisfy a judgment. *Id.* at 1685.

- "An attorney may represent more than one client. Whether the lawyer has an actual conflict of interest under Kansas law is determined on the basis of a practical, real world assessment rather than theoretical hypothesis." *Id.* at 1685-86.

- There was no conflict in this case because the Estate had no assets and the non-claims statute precluded any claim on such assets, "the interests were - in the practical and real world – identical…" *Id.* at 1686-87.

- The $25,000 offer to Gold was reasonable given she was the only passenger represented by counsel. The availability of UIM coverage is an appropriate consideration where the damages are in excess of the policy limits and the insurer seeks to fully pay out the limits. *Id*. at 1687.

- GEICO showed a willingness to settle for the "per accident" limits. *Id*. at 1686.

- When Kannaday made her initial policy limit demand, GEICO had "agreed" to pay Gold $25,000. *Id*. at 1687.

- Paying each passenger $25,000 would set a bad precedent. *Id*. at 1687.

    The district court concluded:

- GEICO was not negligent or in bad faith because "GEICO never refused to obtain a settlement for less than the $50,000 'per accident' policy limit." *Id*. at 1689.

- GEICO acted timely because it initiated the first settlement discussions and attempted to communicate with the injured passengers and communicated with Hoyt's father. *Id*.

- GEICO acted consistent with the advice of counsel when GEICO decided to file an interpleader. *Id*. at 1690.

- The assets of the Estate were not exposed to loss. *Id*.

- GEICO never directly refused Kannaday's offers to settle for the policy limit. *Id*.

- "[T]he amount of real world, practical risk to the Estate in the event of a failure to settle was negligible. The Estate was a shell…protected by a full and complete statutory defense to any attempt to execute on such assets." *Id*.

17

- GEICO's agent mistakenly believed UIM coverage was legally available and Kansas is one of the few states which has adopted a "limits-to-limits" understanding of UIM coverage. *Id*. at 1691.

- The evaluation that led to the $25,000 offer to Gold was a commendable, if mistaken, attempt to maximize the recovery available to claimants. *Id*. at 1691.

- The Estate was free from claims to any of its assets. *Id*. at 1691-92.

- Kannaday's efforts at settlement were brief, perfunctory and pretextual. *Id*. at 1692.

- There was no conflict between GEICO and the insured where Kannaday made a demand in excess of the limit because "[t]he Hoyt Estate and GEICO's interests, in a practical, real world sense, were effectively identical." *Id*. (emphasis added).

- None of GEICO's actions caused any "real damage" to the Estate. *Id*. at 1692-93.

- The Estate and GEICO had an "identity of real-world interests" and there was no conflict between their interests. *Id*. at 1693-94.

- There was "no injury to the Estate from any of the supposed conflicts." *Id*. at 1694.

- "Indeed, Fleeson's successful appeal directly benefitted the Estate by reducing the overall judgment by some $2.5 million." *Id*.

- Judge Rogers applied the Kansas judgment rule to this action and it is the law of the case. *Id*. at 1695.

- "In the present action, however, after January 2006, there was no danger at all that the Hoyt Estate's 'property [might be] seized under an excess judgment,' since it had no property." *Id*. at 1695-96.

- "Even if the judgment rule is applicable, and thereby creates an action for negligence and bad faith…GEICO is not liable under any of the theories advanced...." *Id*. at 1696.

- The Estate's insolvency was not a bar to the action but "a key element in the circumstances of the case." *Id*. at 1696-97.

- "Thus, as a theoretical matter, the Kansas 'judgment rule' recognizes that judgment against an insured may provide the foundation for a bad faith action against the insurer.  However, the court cannot ignore the fact that, as a practical matter and under the real-world circumstances of this case, such a judgment would never occur, except as an attempt to artificially construct a bad faith claim." *Id*. at 1697.

- GEICO is not liable for its "mere errors of judgment." *Id*. at 1698-99.

- The Administrator failed to cooperate with the Fleeson firm's attempt to defend the Estate and independently sought to settle with Kannaday, leading to an ex parte first judgment, obtained without notice to Fleeson or GEICO.  *Id*. at 1699-1700.

- Ball entered into an agreement unilaterally under which he waived attorney-client privileges. *Id*. at 1700.

19

- "In the present action, GEICO has shown not only a 'substantial likelihood' of a different result, the evidence demonstrates an *actual* different in result. The *ex parte* judgment 'utterly' lacked consideration, and the final award was substantially reduced following the remand. Although GEICO ultimately prevailed in vacating the *ex parte* judgment based on the lack of consideration, it incurred large attorney fee costs in having to appeal." *Id.* at 1700.

- There was no evidence that the Administrator's concern about after-acquired assets was valid. *Id.* at 1700-01.

  Kannaday and GEICO appeal. *Id.* at 1704-1707.

## SUMMARY OF ARGUMENT

I.    The district court erred in concluding GEICO acted in good faith in defending the Estate and conducting settlement negotiations.

A.    The court erred in concluding there was never a conflict of interest between the insured Estate and GEICO. A conflict arose, by law, between the Estate and GEICO, when Kannaday filed suit against the Administrator alleging the accident occurred as a result of Hoyt's negligence and asserting a claim for damages in excess of the policy limits.

B.    The court erred in finding GEICO did not breach its duty of good faith (to handle and evaluate a claim as if there were no policy limits and as if it alone would be liable for the entire excess judgment). *Coleman v. Holecek*, 542 F.2d 532, 537 (10th Cir. 1976) (citation omitted). GEICO depleted the funds available by offering Gold more than she requested. GEICO rushed to an interpleader instead of trying to work out a

settlement with multiple claimants. GEICO's agents repeatedly violated their obligations as set forth in GEICO's claims manual. GEICO retained the same lawyers to represent GEICO and defend the insured where there was a conflict of interest. GEICO never considered the best interests of the insured equally with its own. GEICO attacked the settlement the Administrator entered with Kannaday and repeatedly exposed the Estate to excess judgment. The court concluded there was no conflict of interest because the Estate wouldn't have to pay any excess judgment pursuant to the non-claims statute. Therefore, according to the court, the Estate's interests were "effectively identical" (Aplt. App. 1686) to GEICO's. This is contrary to the Kansas judgment rule.

II.    The court erred in finding GEICO acted with reasonable care in defending the Estate and negotiating settlements. A liability insurer must handle a claim without negligence. *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 934 P.2d 65, 89-90 (Kan. 1997) (citation omitted). GEICO did not attempt to settle when it realized Hoyt was liable and each claimant was entitled to compensation in excess of $25,000. It assigned inexperienced examiners to the claim and their supervisors did not correct their mistakes. The examiner evaluated the claim based on whether the claimants had UIM coverage and made a mistake in that determination. GEICO offered Gold more than she requested. GEICO's examiner didn't understand an interpleader, but she directed counsel to file one and ceased attempts at settlement. The examiners failed to follow GEICO's claim handling guidelines with regard to assigning counsel, documentation, responding to offers, evaluating the claims and communicating with superiors.

III.    The court erred in failing to apply the judgment rule of Kansas to this action.  In Kansas, the insolvency of an insured estate does not excuse an insurer from exercising the same good faith it would be expected to exercise were the insured fully financially responsible.  *Farmers Ins. Exchange v. Schropp*, 567 P.2d 1359, 1367-69 (Kan. 1977).  The damage giving rise to claims of bad faith and negligence is the excess judgment.  *Id*. at 1369.  The actions lie, whether or not the insured has paid or can pay any excess judgment.  *Id*.  The court did not apply the judgment rule.  According to the court, "as a practical matter and under the real-world circumstances of this case," such an excess judgment artificially constructs a bad faith claim (Aplt. App. 1697).  There court found the Estate didn't suffer any injury because it didn't have to pay the excess judgment.  That ruling is contrary to the clear, established law of Kansas.  *Schropp*, 567 P.2d at 1367-69.

IV.    The court erred in finding the Administrator breached the cooperation clause of the insurance policy, relieving GEICO of all responsibility under the contract.  Breach of a cooperation clause does not by itself relieve an insurer of responsibility; the insurer must prove substantial prejudice to its ability to defend itself.  *Boone v. Lowry*, 657 P.2d 64, 70 (Kan.App. 1983) (citations omitted). GEICO did not meet its burden.  It fully defended the Estate, through trial, to the result it knew was coming, an excess judgment in favor of Kannaday.  Further, GEICO breached the insurance contract first through its breach of its duty of good faith and negligence, and that breach is irreparable.  *First Hays Banshares, Inc. v. Kansas Sur. Co.*, 769 P.2d 1184, 1189 (Kan. 1989).

V.      The court erred in refusing to enter judgment in Kannaday's favor, including post-judgment interest, pre-judgment interest and attorneys' fees pursuant to K.S.A. 40-908.  This resulted from the court's refusal to apply the Kansas judgment rule. The court erred in finding the Administrator did anything to cause substantial prejudice to GEICO's ability to defend itself when the Administrator took action to protect the Estate. The Administrator did not breach the policy's cooperation clause and GEICO was not relieved from performing its responsibilities under the policy.

## ARGUMENT

The automobile accident occurred in Kansas.  Hoyt was insured under a policy of liability insurance GEICO issued to her, in Kansas.  Kannaday asserted a claim against Hoyt's Estate in Kansas.  The issues against the garnishee involve claims that the garnishee was negligent and that the garnishee acted in bad faith as to the insured Estate. The Court applies the law of Kansas to this case.  *Dahlin v. State Farm Mut. Auto. Ins. Co.*, Case No. 02-2272-CM, 2003 WL 22594412, at *6 (D. Kan. Sept. 26, 2003).

**I.      The district court erred in finding that GEICO had acted in good faith in defending the insured and in conducting settlement negotiations.**

**A.      Standard of Review**

In an appeal from a bench trial, this Court reviews the district court's factual findings for clear error and its legal conclusions de novo.  *Holdeman v. Devine*, 572 F.3d 1190, 1192 (10th Cir. 2009) (citation omitted).  According to this Court, " '[f]indings of fact are clearly erroneous when they are unsupported in the record, or if after our review of the record we have the definite and firm conviction that a mistake has been made.' "

23

*Id.* (citation omitted).

This issue was raised in the Pretrial Order and Plaintiff's Final Suggested Findings of Fact and Conclusions of Law (Aplt. App. 56-58, 60-63, 66-68, 71-74, 1595-1602, 1606-1624). The court ruled this issue in its Memorandum and Order. *Id.* at 16667, 1695-1701.

## B.    Discussion

When a claim is asserted against an insured, which exceeds the policy limit, a conflict of interest exists between the insured and the insurer. *Coleman*, 542 F.2d at 537 (citing *Rector v. Husted*, 519 P.2d 634, 641 (Kan. 1974)). The claim for damages in excess of the policy limits creates the conflict of interest between the insured and the insurer requiring the insurer to give equal consideration to the interests of the insured, treating the interests of the insured as equal to its own. *Schropp*, 567 P.2d at 1366 (citing *Bollinger v. Nuss*, 449 P.2d 502 (Kan. 1969)); *Levier v. Koppenheffer*, 879 P.2d 40, 46 (Kan.App. 1994). "The duty to consider the interests of the insured arises not because there has been a settlement offer from the plaintiff but because there has been a claim for damages in excess of the policy limits. The creation of the conflict by the excess claim means that the claim should be evaluated by the insurer without looking to the policy limits and as though it alone would be responsible for the payment of any judgment rendered on the claim." *Coleman*, 542 F.2d at 537. Whether a conflict of interest existed between an insurer and an insured is a question of law. *Coleman*, 542 F.2d at 537 (citing *Bollinger*, 449 P.2d at 502).

When a liability claim is made against an insured, the insurer owes its duty to the

insured to protect the <u>insured</u>. *Bollinger*, 449 P.2d at 508; *Glenn v. Fleming*, 799 P.2d 79, 85 (Kan. 1990); *Covill v. Phillips*, 452 F.Supp. 224, 226 (D. Kan. 1978). The insurer, once it receives notice of a claim against the insured, must proceed in good faith. *Glenn*, 799 P.2d at 85. The duty of good faith means that the claim must be handled and evaluated as if there were no policy limit and as if the insurer alone would be liable for the entire excess judgment. *Coleman*, 542 F.2d at 537 (citing *Rector*, 519 P.2d at 641). The duty requires the insurer to always consider the interests of the insured at least equally with its own interests. *Coleman*, 542 F.2d at 537 (citing *Bollinger*, 449 P.2d 502). Good faith requires an insurer honestly evaluate the value of an unlitigated claim based on its apparent merits or lack thereof, the possibility of liability being established, and the probable nature and extent of injuries to be proved. *Covill*, 452 F.Supp. at 226 (citing *Bollinger*, 449 P.2d at 511). Whether an insurer in defending a claim and refusing an offer of settlement within the policy limits was negligent or acted in bad faith is a question of fact. *Bollinger*, 449 P.2d at 514. "An insurance company acting honestly and in good faith upon adequate information should not be held liable because it failed to prophesy the result. Something more than mere error of judgment is necessary to constitute bad faith. *Glenn*, 799 P.2d at 305-06 (citing *Bollinger*, 449 P.2d at 514).

## 1.    Conflict of Interest

GEICO trained its examiners that if there is a claim against its insured in excess of the policy limits, a conflict exists between GEICO and the insured (Aplt. App. 1785-87). Here, although Kannaday asserted a claim against the Estate, in excess of the policy limits (Aplt. App. 3353-54), the district court found there was no conflict of interest

25

between GEICO and the Estate because their interests were "in a practical, real world sense" effectively identical and there was no "actual" conflict. *Id*. at 1686, 1692-93. The court cited no law for this conclusion. *Id*. at 1686, 1693. There is no such exception to the law that when a claim an excess claim is asserted against an insured, a conflict exists between the insured and the insurer. *Coleman*, 542 F.2d at 537.

According to the court, even if there was a conflict of interest, the Administrator waived the conflict by indicating he was not interested in anything the Fleeson firm had to say. *Id*. at 1694. Even if the Administrator gave that impression to his attorneys, that does not waive a conflict that exists as a matter of law between an *insured* and an *insurer* and it does not render the conflict nonexistent. The court's conclusion is contrary to Kansas law. According to the court, whether a *lawyer* has a conflict under Kansas law is determined on the basis of "practical, real world assessment rather than theoretical hypothesis." *Id*. at 1685-86. The court cited no law for this holding. Here, the issue is whether there was a conflict between the *insured* and *GEICO*. The law of Kansas as to when a conflict exists between the *insured and insurer* is clear; the conflict arises where a claimant makes a demand in excess of the policy limits. *Coleman*, 542 F.2d at 537 (citing *Rector*, 519 P.2d at 641). The court's conclusion that no conflict of interest existed is reversible error. *Id*.

As this Court will see, the district court relied on this conclusion in finding there was no breach of the duty of good faith (Aplt. App. 1686-87).

## 2.      Breach of the Duty of Good Faith

According to the court, GEICO acted in good faith because it paid PIP benefits

and funeral benefits (Aplt. App. 1671).  However, GEICO trained its examiners that its

duty to its insured is to *secure a release* in exchange for a settlement offer; it has nothing

to do with paying PIP or funeral benefits.  (Aplt. App. 1732, 2481, 2492-93, 1901, 1908,

4824, 4849-50).  That does not secure a release for the insured.  The insurer owes a duty

to protect the insured against a *liability claim*.  *Bollinger*, 449 P.2d at 508.

The court found GEICO demonstrated good faith because GEICO based its initial offers

on whether the claimants had UIM coverage that they could use to supplement their

claims.  That consideration in and of itself is bad faith.  The court ignored that a UIM

carrier has a right of subrogation.  Had Kannaday had UIM coverage, that would not have

benefited the Estate.  It would have created *another* claim (subrogation claim) against the

Estate.  GEICO's duty was to obtain a release of claims for the insured, not create another

claim.  *Id*. at 511.

The court found the "actual" payments by GEICO were $25,000 to Hoyt, $25,000

to Wright (in UIM) and $25,000 to the hospital (Kannaday lien) (Aplt. App. 1673-74).

The UIM benefits paid to Wright were a volunteer payment (that GEICO did not owe)

made years after Kannaday made two policy limit demands.  Wright did not make any

claim before the interpleader was filed or in the interpleader (Aplt. App. 1756, 1919,

2014-15).  The examiner didn't tell Kannaday that she remained obligated to pay the

remainder of the hospital lien (Aplt. App. 1910-11, 3873).  Further, it is <u>not</u> GEICO's

duty to reduce a debt of a *claimant*; GEICO's duty is to protect the insured. *Bollinger*, 449 P.2d at 508.

The court had a problem with Kannaday demanding $25,000 before her attorney had all the passengers' medical records (Aplt. App. 1674-75). The court didn't have a problem with Gold doing the same thing. *Id*. at 1672-73. In fact, the court found it was reasonable for GEICO to offer Gold more than she demanded because she'd retained counsel. *Id*. GEICO knew in August 2005 that all passengers were entitled to reasonable compensation in excess of $25,000 (Aplt. App. 1735, 2458-59, 2466, 2468, 2476, 2482-83 769). Why would it matter whether Kannaday had all these records when she made her settlement offer?

The court's finding that GEICO never rejected Kannaday's policy limit demands was clear error (Aplt. App. 1690, ¶ 11). According to the court, there was no "time limit" on the January 19 offer. *Id*. However, it expired when it was ***rejected*** by GEICO on February 22. *Id*. at 3183-85. The court felt Kannaday withdrew her second policy limit demand (February 22) too fast, on February 27, and the court didn't like that she withdrew it after obtaining counsel. *Id*. at 1690.

GEICO did not argue the initial policy limit offer imposed any unreasonable deadline. *See Roberts v. Printup*, 595 F.3d 1181, 1190 (10th Cir. 2010). The court failed to recognize that the delay and rejection of the offer and failure to accept the second offer resulted in a change of circumstances for Kannaday, her unnecessary exposure to costs and attorneys fees, and a lawsuit. *See id*. This Court has stated there is no "additional burden on claimants to follow up with insurers who have failed to timely respond to, or

28

even acknowledge, their offers before filing a lawsuit." *Id*.  Here, Kannaday had a rejection!  She gave GEICO another chance and the offer was not accepted. The court didn't like that Kannaday sued the Administrator before he had been appointed (Aplt. App. 1677), but GEICO never raised issues of capacity/service of process.

The court thought it was evidence of good faith that GEICO asked Vix to determine how to split $50,000, without giving him any instructions (Aplt. App. 1675-76, 1689).  On the contrary, that was *GEICO's* duty owed to its insured.  *Covill*, 452 F.Supp. at 226 (citing *Bollinger*, 449 P.2d at 511).  Vix told GEICO it was imperative GEICO move promptly to file the interpleader before any other settlements were reached or it would complicate matters *for GEICO* (Aplt. App. 1772-73, 1858-59, 3182).  A settlement with Kannaday and Wright would have resulted in a release of the insured.  GEICO agreed to file the interpleader instead of negotiating settlements.   The court found an interpleader is a recognized way for an insurer to resolve multiple claims (Aplt. App. 1682-83).  However, it is not favored; the insurer is to try to avoid litigation and pursue settlement through the methods preferred by the Kansas Supreme Court.  *Schropp*, 222 Kan. 612, 567 P.2d at 1367.

The court's finding that attorney Vix told the Administrator that the non-claim statute protected the Estate's assets and that Vix was filing a summary judgment motion "ensuring any recovery …would be limited to the policy proceeds" was clear error. (Aplt. App. 1678-80).  Vix told the Administrator that the non-claim statute barred the claim against the Estate.  *Id*. at 1930-31, 2005.  The Wyandotte County court denied the

Estate's motion for summary judgment on that issue and that decision was affirmed. *Id*.

at 1943-45, 1994, 3518-3587, 1984.

After telling the Administrator he was going to appeal the denial of summary

judgment, the Administrator's attorney, at the direction of GEICO, attacked the

settlement/release on appeal because that benefitted GEICO (Aplt. App. 1943-45, 1984,

1994, 2086-94, 2104-05, 2108-12, 2130-32, 2134-38, 2144-45, 2193-94, 2236-37, 3332,

3377, 3383, 3391, 3518-3587, 4824, 4865-69, 4894-95, 4900-02, 4905-10, 4912-18,

4932-38). GEICO didn't consider the best interests of the insured. The court found

GEICO moved to have the Administrator removed. *Id*. at 1679. Actually, GEICO asked

the Administrator's *own attorney* to remove him for GEICO's perceived benefit (Aplt.

App. 1772-73, 1858-59, 3182).

GEICO repeatedly exposed its insured to judgment. In August 2005, GEICO

determined Hoyt was liable and the claims were each in excess of limits (Aplt. App.

1735, 2458-59, 2466, 2468, 2476, 2482-83). GEICO's approach was, since the Estate

would not pay the judgment, GEICO didn't have to consider the insured's interests.

Judge Rogers recognized the duty of the liability insurer is to protect the insured from

entry of judgment; it is not limited to protecting the insured from judgment the insured

*will have to pay* (Aplt. App. 1163-64); *Glenn*, 99 P.2d at 316-17. The insolvency of an

insured's estate doesn't excuse an insurer from exercising the same good faith it would be

expected to exercise were the insured financially responsible. *Glenn*, 99 P.2d at 317.

GEICO did not need every medical record to evaluate each passenger's claim in excess of

the limits; it knew that in August 2005. GEICO did not try to settle at that point.

GEICO, as long as it acted in good faith, could have settled claims on a first come-first serve basis. GEICO didn't do that. On October 5, 2005, Gold made a proposal that she and the other claimants receive $16,666.67. GEICO ignored the offer, then offered Gold more than she requested ($25,000). On November 4, based on the incorrect evaluation regarding UIM coverage, GEICO offered Kannaday $12,500 and Wright $12,500. Neither offer was accepted by January 19 when Kannaday made her reasonable policy limit demand. GEICO could have, and should have, accepted. Instead, GEICO waited until February 22 to reject the offer.

GEICO could have accepted Gold's October offer of $16,666.67 and accepted Kannaday's offer of $25,000 in January. Wright never made a claim throughout the life of the interpleader.

The court's finding that, at the time of Kannaday's January 19, 2006 demand, GEICO had "agreed" to pay Gold $25,000, was clear error. Gold did not accept the offer until *February* 2006; GEICO could have withdrawn it after receiving Kannaday's demand (Aplt. App. 2001-02). Further, offering Gold $25,000 when she asked for $16,666.67 isn't reasonable. The court found that paying each passenger $25,000 would set a bad precedent (Aplt. App. 1687). Kannaday never argued GEICO should've paid $75,000 in liability coverage for the Estate (Aplt. App. 1595-1626).

Instead of trying to obtain releases from Kannaday and Wright, GEICO filed the interpleader and *avoided* settlement. The Fifth Circuit considered a similar scenario in *Liberty Mut. Ins. Co. v. Davis*, 412 F.2d 475 (5th Cir. 1960), *abrogated on other grounds*, *Venn v. St. Paul Fire and Marine Ins. Co.*, 99 F.3d 1058, 1066 (11th Cir. 1996). There,

31

an accident occurred in Florida, clearly a "judgment rule" state.  *Id*. at 480-83.  Several people were injured in an accident.  *Id*. at 477.  The insurer refused to settle the Davises' claim for policy limits because it feared it would be liable to other claimants.  *Id*. at 477-78.  Counsel advised the insurer that its primary duty was to the insured and is not diminished by the fact that the insured lacks financial responsibility.  *Id*. at 478.  Counsel discussed a "first in time, first in right" approach and told the insurer it may not refuse a claimant's reasonable settlement offer on the theory it would exhaust coverage limits.  *Id*.

The insurer ignored counsel and delayed payment to claimants pending its filing of an interpleader.  *Id*.  This approach ignored the best interests of the insured, according to the Fifth Circuit.  *Id*. at 482-83.  The insurer's obligation is to use limited funds to get as many claims *released* as possible; dumping the policy limit into court doesn't protect the insured.  *Id*. at 480-81.  The Fifth Circuit rejected the insurer's "concern about claimants" argument.  *Id*. at 481.  "It is possible injury [to the insured], not the [claimants] that matters…whatever solicitude the company may have shown for the [other claimants'] cause and for an equitable division of the … proceeds … has no direct bearing on the real issue…the company's treatment of its insured."  *Id*.

In *DeMarco v. Travelers Ins. Co.*, 26 A.3d 585 (R.I. 2011), the state supreme court echoed the Fifth Circuit regarding the rush to interpleader.  The court found the insurer has a duty to use the limited amount of money available to obtain as much protection as it can for the insured.  The insurer cannot dump the policy limits into court, thereby obtaining <u>no</u> protection for its insured.  *Id*. at 613-14.  GEICO's rush to file an

interpleader in this case was bad faith. *Schropp*, 567 P.2d at 1367. GEICO did not protect the Estate.

GEICO's examiners repeatedly violated their obligations as set forth in GEICO's claims manual, including, but not limited to, requirements for proper documentation, investigation, evaluation and negotiation. Violation of the insurer's procedures is evidence of negligence and bad faith in handling a claim. *Blann v. Rogers*, Case No. 11-2711-CM, 2014 WL 2048175, *8 (D. Kan. May 19, 2014); *Bollinger*, 202 Kan. 326, 449 P.2d at 512. The examiners were inexperienced in handling catastrophic injuries and a deceased insured. There was no supervision or recognition of their mistakes. An examiner made settlement evaluations, not based on the relative injuries sustained by the passengers or exposure to the insured, but instead based on whether the claimants had their own UIM coverage. He didn't document an offer in the claim diary (Aplt. App. 2444, 2480, 2509-10, 2513, 4824, 4850-51). GEICO's examiners evaluated Kannaday's claim as an excess claim and then stopped the evaluation (Aplt. App. 1737-39). That is bad faith; an insurer must evaluate a claim as though it alone will be responsible for the entire amount of judgment rendered on the claim. *Levier*, 879 P.2d at 46. GEICO filed an interpleader instead of obtaining releases (Aplt. App. 1766-67, 1771, 1773, 1776-78, 1792, 1898-1900, 1955, 4824, 4837-38). GEICO did not respond to Kannaday's January 19, 2006 policy limit demand until its counsel rejected it on February 22 and GEICO didn't accept her second policy limit demand (Aplt. App. 1754, 1765, 1788-89, 1857, 2000-01, 2037, 3349, 3351, 3183-85).

The court found GEICO acted in good faith because it never refused to obtain a settlement for less than the $50,000 "per accident" limit (Aplt. App. 1689). That was not the limit of GEICO's duty to its insured; it was to use the limited funds to obtain as much protection, through releases, as it could for the Estate. *Levier*, 879 P.2d at 46; *Schropp*, 567 P.2d at 1367. Similarly, in *Schropp*, the insurer determined its liability, it authorized the expenditure of the policy limits in settlement of multiple claims, and it paid its limits into court. 567 P.2d at 1367. "Farmers made no effort to get the claimants together and work out…settlement." *Id*. Schropp's attorney demanded policy limits. *Id*. The offer was refused, although Farmers knew Schropp's claim would exceed the limits and it knew its insured was liable. *Id*. Farmers required Schropp to petition for letters of administration and then opposed the appointment of anyone other than the deceased's father. *Id*. It appealed an adverse decision regarding that issue. *Id*. Farmers then denied liability, for more than four years after the collision, even though its investigation indicated its insured was at fault. *Id*. According to the Supreme Court, there was substantial competitive evidence to support the finding that Farmers acted negligently or in bad faith toward the insured in the handling the claims. *Id*. at 1367-68.

The court found GEICO acted in good faith because it "initiated the first settlement discussions", attempted communications with the passengers and communicated with Hoyt's father (Aplt. App. 1689). That does not mean it was *not* bad faith for GEICO, because it didn't think the Estate would have to *pay* any portion of the judgment, to do everything it was not supposed to do in negotiating this case. *Glenn*, 99

P.2d at 317.  That's clearly what happened here; GEICO's procedures for negotiating liability claims were ignored.

Contrary to the district court's finding, this is not a case of "mere errors of judgment." (Aplt. App.  1698-99); *Glenn*, 799 P.2d at 85.  An insurer is not required to predict with exactitude the result of trial.  *Bollinger*, 449 P.2d at 514.  An insurer "does not act in bad faith where it honestly believes, and has cause to believe, that any probable liability will be less than policy limits."  *Id*.  Here, GEICO *knew* an excess judgment would be entered in Kannaday's favor.  GEICO didn't give equal consideration to the Estate's interests because it didn't think the Estate would have to pay the excess judgment.  That is bad faith.  The insolvency of the insured estate does not excuse the insurer from exercising good faith.  *Glenn*, 799 P.2d at 92 (quoting *Schropp*, 567 P.2d at 1369).  In *Levier*, the court recognized that "[a]n ordinarily prudent person would not reject a $100,000 settlement offer to face liability in excess of $2 million.  Instead of protecting [the insured's] best interests, [the insurer] acted with indifference toward its insured's ultimate financial liability."  *Id*. at 47.

GEICO further breached this duty to consider the best interests of the Estate when GEICO, knowing Kannaday's excess claim had created a conflict of interest between GEICO and the Estate, and contrary to its own policy manual, retained the same lawyers to represent the insured and GEICO with regard to the claims against the Estate.  GEICO interfered with the Estate settling and obtaining a release of Kannaday's claim.  GEICO had $25,000 at stake.  Kannaday sought damages of $15,000,000 and obtained a

judgment exceeding $4,000,000. GEICO took all of these actions in the face of the judgment rule. *Glenn*, 99 P.2d at 317.

The court's determination that GEICO acted in good faith in defending the Estate and in conducting settlement negotiations was clear error.

## II.    The district court erred in finding that GEICO had acted with reasonable care in defending its insured and in negotiating settlements.

### A.    Standard of Review

In an appeal from a bench trial, this Court reviews the district court's factual findings for clear error, and its legal conclusions de novo. *Holdeman*, 572 F.3d at 1192 (citation omitted). This issue was raised in the Pretrial Order (Aplt. App. 56-58, 60-63, 66-68, 71-74) and Plaintiff's Final Suggested Findings of Fact and Conclusions of Law (Aplt. App. 1582-1606, 1614-25). The court ruled this issue in its Memorandum and Order (Aplt. App. 1688-1701).

### B.    Discussion

When a liability claim is made against an insured, the insurer must handle that claim without negligence. *Associated Wholesale Grocers, Inc.*, 934 P.2d at 89-90 (citing *Glenn*, 799 P.2d at 89). The insurer must conduct itself with that degree of care which would be used by an ordinarily prudent person in the management of his own business, where no policy limits are applicable to a claim. *Schropp*, 567 P.2d at 1365-66 (citing *Bollinger*, 449 P.2d at 511). In Kansas, a liability insurer is liable in excess of its limit if it acted <u>either</u> negligently <u>or</u> in bad faith. *Associated Wholesale Grocers, Inc.*, 934 P.2d at 89-90.

The insolvency of an insured estate does not excuse the insurer from handling the claim without negligence. *Schropp*, 567 P.2d at 1369. Whether GEICO was negligent in defending Kannaday's claim and refusing Kannaday's policy limit demands is a question of fact. *Bollinger*, 449 P.2d at 514.

GEICO's agents knew in August 2005 that Hoyt was liable and each passenger was entitled to reasonable compensation in excess of $25,000 (Aplt. App. 2466, 2468-69, 2483). At that time, GEICO made no attempt to settle. *Id*. Examiners Roarick and Brantley were inexperienced in handling significant injury claims where the insured had died and Brantley knew nothing about interpleaders. *Id*. at 2444, 1750, 1905, 2471-72. Brantley thought an interpleader would result in a release of the insured. *Id*. at 1766-67, 1771, 1773, 1776-78, 1792, 1898-1900, 1955, 4824, 4837-38. Their mistakes were not recognized or corrected by supervisory personnel. *Id*. at 1749, 1775, 1819-20, 1822-24, 1829-30, 1847, 1850-51, 1856-57, 1917-19, 1925-27, 2043-44, 2489-91, 2494, 2500-01, 2505-06, 4824, 4852, 4869-70, 4927. The examiner evaluated the claims for settlement purposes based on whether claimants had their own UIM coverage instead of their relative injuries or the relative exposure to the insured. *Id*. at 2468-69, 2476-77, 2490-91, 2514, 1744-45, 2476. Further, Roarick was mistaken about who had UIM coverage because he didn't note the UIM clause contained in the Hoyt and Wright policies (Wright was insured by GEICO!) and he wasn't familiar with Kansas law (although he was assigned to handle Kansas claims). *Id*. at 2477-78, 2480, 2494. Gold offered to settle for $16,666.67 and GEICO countered with $25,000, which, after it was accepted in February 2006, depleted the "per accident" limit (Aplt. App. 2001-02, 2476-77, 2490-91, 2514).

37

No ordinarily reasonable prudent person would have done that in the management of his

own business affairs, with no policy limits applicable to the claim; that is negligence.

*Levier*, 879 P.2d at 47.  It is clear from GEICO's manual and the testimony of the

examiners that they are expected to understand GEICO's policies and the law of Kansas,

where they handle claims.  Failure to know the applicable law is negligence.  GEICO's

Denver claims department is totally unfamiliar with Kansas UIM law.  The examiner

certainly should not have based all his settlement offers on that area of law.

Roarick didn't document Gold's offer in the diary or report it to his supervisors or the

other passengers (Aplt. App. 2411, 2444, 2480, 2509-10, 2513, 4824, 4850-51, 4850-51,

1742-44, 1748).

       In January 2006, Kannaday offered to settle for $25,000; GEICO hadn't settled

with Gold or Wright.  *Id*. at 1754, 1756, 1919, 2001-02, 2014-15, 3349.  GEICO rejected

Kannaday's offer even though it knew the extent of her injuries.  *Id*. at 1735, 1765, 1788-

89, 1857, 2000-01, 2037, 3351, 3183-85.  No reasonably prudent person would have

made that decision in the management of his own business affairs, with no policy limits

applicable to the claim.

       GEICO filed the interpleader after advised by counsel that it should file it and

*avoid* any claimant releasing the Estate.  *Id*. at 1766-67, 1771-73, 1776-78, 1792, 1858-

59, 1898-1900, 1955, 3182, 4824, 4837-38).  GEICO then ceased attempts to settle with

Kannaday.  *Id*. at 1775, 1819-20, 1822-24, 1829-30, 1847, 1850-51, 1856-57, 1917-19,

1925-27, 2043-44, 4824, 4852, 4869-70, 4927.

GEICO's agents failed to follow GEICO's own claim handling guidelines with regard to documentation, responding to offers, evaluating the claims and communicating with superiors/home office (Appellant's Statement of Facts, *supra*, pp. 2-9).  GEICO's agent retained the same attorney to represent GEICO and the Estate even though Kansas is a "judgment rule" state (Aplt. App. 1775-76, 1789-90, 1792, 1804, 1955, 3353-54, 3399); *Schropp*, 567 P.2d at 1369 (Kan.).  GEICO directed counsel that it had retained to act contrary to the interests of the Estate.  (Appellant's Statement of Facts, *supra*, pp. 3-9, 11-12).

Failure of an insurer to follow its own policies is evidence of negligence.  *Blann*, Case No. 11-2711-CM, 2014 WL 2048175, *8; *Bollinger*, 449 P.2d at 512.  That clearly happened here.

The lower court concluded GEICO was not negligent because it never refused to pay less than $50,000 and GEICO paid $75,000 to Gold and Wright, even though Wright was not entitled to UIM benefits (Aplt. App. 1681-82, 1689).  The court concluded GEICO made a mistake in believing Kannaday and Wright had UIM coverage, but it was a commendable mistake (Aplt. App. 1691).

The court ignored the law as to an insurer's duty.  The insurer is to use limited funds to obtain as much protection, through releases, as it can for its insured.  *Levier*, 879 P.2d at 46; *Schropp*, 567 P.2d at 1367.  GEICO didn't do that.  It is possible injury to the *insured* that matters.  *Davis*, 412 F.2d at 481.  Whatever solicitude the insurer may have shown for claimants and for an equitable division of the proceeds has no direct bearing on the real issue, the insurer's treatment of its insured.  *Id.*  Here, GEICO mistakenly paid

Wright $25,000 in UIM benefits that it did not owe and it paid Gold $25,000 when she only asked for $16,666.67. The payment to Wright did nothing to protect the insured and the payment to Gold threw away money that was available to settle with other claimants. Contrary to the court's holding, Kansas law is clear that this was not a case of "honest errors of judgment." *Bollinger*, 449 P.2d at 514. GEICO knew judgment would be entered in Kannaday's favor in excess of the limits. GEICO's agents negligently handled this claim because they didn't think the insured would pay the excess judgment. GEICO and its attorneys ignored the Kansas judgment rule. That is not a situation where the insurer honestly believes or has cause to believe that any probable liability will be less than policy limits. *Bollinger*, 449 P.2d at 341.

The court's determination that GEICO did not act negligently in defending the Estate and negotiating settlements was clear error.

## III.    The district court erred in failing to apply the judgment rule to the present action.

### A.    Standard of Review

This Court reviews the district court's factual findings for clear error, and its legal conclusions de novo. *Holdeman*, 572 F.3d at 1192 (citation omitted).

This issue was raised in Kannaday's response to GEICO's motion for summary judgment (Aplt. App. 449, 507-518, 532) and in Plaintiff's Final Suggested Findings of Fact and Conclusions of Law (Aplt. App. 1582, 1595, 1597-1602). Judge Rogers ruled this issue in his Order denying GEICO's motion for summary judgment (Aplt. App. 1151, 1157-58, 1160-65). Judge Marten found it unnecessary to resolve whether it was

40

error for Judge Rogers to apply the judgment rule to this case, but Judge Marten did not

apply the rule (Aplt. App. 1695-96).

**B.    Discussion**

The court was obligated to follow Kansas law in deciding the issues of this case.

The facts of *Schropp*, 567 P.2d 1359, were outlined in Point I(B)(2), *supra*.   They are

<u>very</u> similar to the facts of this case.

> In *Schropp*, the Supreme Court adopted the judgment rule, stating:

> [T]here are two separate rules in this regard.   One, known as the
> prepayment rule, holds that payment of an excess judgment, or a portion
> thereof, is a condition precedent, and that no cause of action arises in favor
> of an insured and against the insurer for wrongful failure to settle a claim
> within the policy limits until the insured has made some payment upon the
> judgment secured against him.   Courts which have adopted the other rule,
> known as the "judgment rule," hold that payment of the excess judgment,
> or a portion thereof, is not a condition of recovery; and that such an action
> may be maintained by the insured, even though the insured has made no
> payment upon the judgment.

*Id*. at 1368.

> Farmers…contends that it is not obligated to exercise good faith in order to
> settle damage claims within the policy limits when its insured is bankrupt,
> insolvent, or otherwise judgment proof; and that an insolvent estate…like
> an insolvent insured, cannot be harmed by entry of an excess judgment
> against it, since it has no assets with which to pay the judgment.

*Id*.   The Supreme Court rejected the prepayment rule, stating:

> [W]e see no reason why the insolvency of an insured or his estate should
> excuse the insurer from exercising the same good faith it would be expected
> to exercise, were the insured fully financially responsible.   Further, an
> insured need not wait until his property is seized under an excess judgment
> before commencing action against an insurer whom the insured claims has
> acted negligently or in bad faith in failing to settle a claim within the policy
> limits.   The action lies, whether or not the insured has paid or can pay an
> excess judgment.

*Id*. at 1368-69.  The "damage" sustained by the insolvent insured estate, giving rise to the claims, is the excess judgment.  *Id*. at 1369.

It is clear Judge Marten did not want to find bad faith, negligence, or injury where the insolvent Estate was not required to pay the excess judgment.  According to the court, the Estate would not acquire assets in the future and the non-claim statute barred enforcement of claims against any assets (Aplt. App. 1667, 1669, 1674, 1680-81, 1690-92, 1695-96).  According to the court, as a "theoretical matter", the judgment rule recognizes that judgment against an insured "may" provide the foundation for a bad faith action against the insurer.  However, "as a practical matter and under the real-world circumstances of this case," such a judgment artificially constructs a bad faith claim.  *Id*. at 1697.  The court found the insolvency of the Estate "is relevant to understanding the relative position of the parties, and the context under which the parties operated.  It is also relevant to show the context of the negotiations of the parties…settlement was not possible because [Kannaday] was never truly interested in settlement." (Aplt. App. 1696-97).

According to the court, there is a distinction between an estate with no assets (*Schropp*) and an estate with no assets *after* the claim period of K.S.A. 59-2239(1) has run, such that the estate protected by K.S.A. 59-2239(1) cannot show damage/injury giving rise to a claim for bad faith or negligence.  According to the court, the Estate was judgment proof and applying the judgment rule "creates the bizarre result that a creditor of the insured may recover damages which the insured never…suffered."  *Id*. at 1696.

This distinction makes no difference; the result is the same regardless of whether the insured can't pay because insolvent or doesn't have to pay because of the application of some law.  The judgment rule applies even where the insured ***is*** judgment proof. *Schropp*, 567 P.2d at 1368-69.

Therefore, even if this Court considers the Hoyt Estate "judgment proof" because it does not <u>have to pay</u> the excess judgment, the judgment rule applies.  *Id*. at 1368-69. Further, the Kansas Court of Appeals ruled the Estate of Hoyt is ***not*** judgment proof. (Aplt. App. 3609, 3616-17); *Kannaday v. Ball*, 234 P.3d 826, 830-31 (2010). Kannaday's tort claim *could* proceed to judgment against the Estate.  *Id*.

This case is no different than *Pistalo v. Progressive Cas. Ins. Co.*, 983 N.E.2d 152 (Ind.App. 2012).  Pistalo claimed injury as a result of the negligence of Wilks in causing an accident.  Wilks died.  Progressive insured Wilks.  Pistalo petitioned for appointment of an administrator and offered to settle for policy limits, but Progressive declined. Judgment was entered against the estate in excess of the policy limits.  *Id*. at 154-55. Indiana had a "nonclaim" statute.  In order to reach the assets of the estate, it was necessary for Pistalo to make claim within nine months; he didn't do that.  *Id*. at 155-58. Therefore, Progressive claimed it couldn't be liable in excess because the estate had no legal obligation to pay a judgment.  The court recognized the "judgment rule" was the law of Indiana and public policy supported the rule.  *Id*. at 157 (citation omitted). According to the court, "…Progressive not only was obligated to insure Wilks for the…policy limit, it also owed Wilks pursuant to that insurance policy an obligation to exercise good faith in handling Pistalo's claim against her.  Included in that good faith

43

obligation was Progressive's duty to avoid exposing Wilks' estate to excess liability by refusing to settle for…limits.  If Progressive failed to act in good faith, it risked liability to the estate for any excess judgment against it. [citation omitted].  In that event, Progressive's total obligation… [includes]…the amount of any excess judgment." *Id*. at 158-59.

According to Judge Rogers, his decision that the operation of K.S.A. 59-2239 did *not* require summary judgment for GEICO was in accord with (1) public interest in encouraging settlements, and (2) equalization of contenders' strategic advantages (Aplt. App. 1164) (citing *Glenn*, 799 P.2d at 93 (additional citation omitted)).  In Kansas, insurers are to handle claims in good faith, without negligence, regardless of the insured's financial situation.  *Glenn*, 799 P.2d at 93.  All contenders enjoy the same strategic advantages and insurers are encouraged to settle claims.  *Id*.

Judge Marten concluded GEICO's actions and the existence of any conflict did not cause "real damage" or "injury" to the Estate and there couldn't be a conflict because GEICO and the Estate had an "identity of real-world interests."  (Aplt. App. 1692-94).  Again, the Kansas Supreme Court (and Judge Rogers) ruled this issue.  The judgment against the insolvent Estate is sufficient alone to demonstrate damages.  Aplt. App. 1163-64; *Schropp*, 567 P.2d at 1369.  No "real world" exception exists where the insured is an insolvent estate and the non-claims period has run.  *Schropp*, 567 P.2d at 1369.  This case presents no exception to the law that a claim in excess of the policy limits creates a conflict between the insurer and insured.  *Bollinger*, 449 P.2d at 537.

The court gave lip service to the judgment rule; it didn't apply it. The court found the judgment rule is just a "theoretical matter" (Aplt. App. 1697). Judge Marten clearly feels that the fact that the Estate didn't have to pay the excess judgment, in the "practical", "real-world", *should* excuse the insurer from exercising the same good faith it would be required to exercise were the insured financially responsible (Aplt. App. 1696-97). Clearly, the court would *not* have found GEICO acted in good faith and without negligence if Hoyt were alive. According to the court, because the Estate did not have to pay the excess judgment, there was no conflict between GEICO and the Estate, GEICO acted in good faith and without negligence, and the Estate was not injured by GEICO. That is contrary to established Kansas law. *Schropp*, 567 P.2d at 1368-69. The court committed reversible error in refusing to recognize and apply the judgment rule to this case.

**IV.    The District Court erred in finding that the Administrator breached the policy by failing to cooperate.**

**A.    Standard of Review**

This Court reviews the district court's factual findings for clear error and its legal conclusions de novo. *Holdeman*, 572 F.3d at 1192 (citation omitted). This issue was raised by GEICO on summary judgment (Aplt. App. 192, 224-233). Kannaday responded (Aplt. App. 449, 521-32). Judge Rogers found material issues of fact barred summary judgment on this basis (Aplt. App. 1151, 1165-68). GEICO raised this issue in a trial brief (Aplt. App. 1528, 1538-41). The court found for GEICO on this affirmative defense (Aplt. App. 1667, 1699-1701).

45

B.    **Discussion**

Whether a breach occurred is a question of fact.  *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 298 P.3d 250, 265 (Kan. 2013).  Breach of a cooperation clause does not by itself relieve an insurer of responsibility; the insurer must prove ***substantial prejudice to the insurer's ability to defend itself***.  *Boone*, 657 P.2d at 70 (citations omitted)).  That is particularly true where the issue before the Court is alleged lack of cooperation.  *Associated Wholesale Grocers, Inc.*, 934 P.2d at 84.  Whether the insurer was substantially prejudiced is a question of law.  *U.S. v. Windrix*, 405 F.3d 1146, 1154 (10th Cir. 2005).

The court concluded the Administrator breached the cooperation clause because he entered the settlement with Kannaday even though Judge Lampson ruled the non-claim statute protected the Estate's assets (Aplt. App. 1682).

The Administrator initially signed the settlement agreement because the Administrator felt there was a risk to the Estate's after-acquired assets (Aplt. App. 1934-1942, 1947-48, 1991-92, 2058, 2062, 2064-66, 2111, 2161, 2186-93, 2207-08, 2210-13, 2220-22).  The Administrator tried to do what *GEICO* was supposed to do, protect the Estate.  GEICO attacked that agreement on appeal and tried the case, even though it knew the outcome would be an excess judgment against the Estate.

The court found the Administrator failed to cooperate by entering a settlement the Court of Appeals later found unenforceable (Aplt. App. 1685).  However, although the attorneys attacked the agreement on appeal, at the direction of GEICO, they did not raise the issue of after-acquired assets.  *Id*. at 1992-94, 2102, 2110-11, 2193.

46

The court concluded the Administrator failed to cooperate because his concern about a risk to the Estate was invalid (Aplt. App. 1700-01).  The Administrator was entitled to protect himself and the Estate from any risk, even where the prospect was "slight" or even where the attorney retained by GEICO felt the concerns were invalid. Notably, the Administrator again signed the settlement agreement *after* Vix turned out to be wrong on the clearly established law of Kansas (Aplt. App. 1943-45, 1994, 3518-3587, 1984; K.S.A. 59-2239(1)).  Kannaday's claim *could* proceed against the Estate.  *Id.*

The court found the Administrator failed to cooperate because the settlement entered by the Administrator was presented to the Court ex parte with no notice to the Estate or GEICO and judgment was entered against the Administrator (Aplt. App. 1683-84).  The Administrator *agreed* that the settlement would be presented to the court ex parte.  The Fleeson firm knew this.  The Administrator signed the agreement and gave it to Vix (Aplt. App. 1932-37, 2063-64, 2236, 3316-21).  GEICO knew in August 2006 that the Estate had agreed this settlement would be presented to the trial court ex parte (Aplt. App. 4824, 4855-58, 4862, 4864).  Townsley appeared at the deposition where the Administrator *again* signed the agreement (Aplt. App. 1935-36, 2065-67, 2152-53, 2203-04).  Everyone had notice.

The court found the Administrator failed to cooperate because he signed a waiver of his attorney-client privilege in the initial garnishment action (Aplt. App. 1684).  That is not a failure to cooperate.  At that point, the Estate and Kannaday were united in interest.  "The garnishor in a garnishment proceeding stands in the shoes of his debtor." *Coleman*, 542 F.2d at 538.  The Fleeson firm did not represent the Estate in that action.

47

The privilege was the *Administrator's* privilege to waive. *U.S. v. Ryans*, 903 F.2d 731, 741 n. 13 (10th Cir. 1985).

The court found GEICO was substantially prejudiced because its successful appeal (attacking the settlement) directly benefitted the Estate by reducing the overall judgment, but at the cost of large attorney fees (Aplt. App. 1694, 1700).  The Administrator had entered a settlement whereby the Estate <u>was released</u>.  GEICO attacked that agreement, had it set aside, and forced this matter to trial, where GEICO knew the judgment would be a judgment far in excess of the policy limits.  GEICO did not benefit the Estate by doing that.

The Administrator's settlement didn't cause GEICO substantial prejudice to its ability to defend itself.  GEICO *did* defend against the Kannaday lawsuit after it had the settlement set aside.  Judge Boal entered a judgment in the amount of $4,723,368.60 in favor of Kannaday and against the Estate, after a trial occurred in which GEICO defended the Administrator.  It is undisputed that Hoyt was liable in causing this accident and Kannaday was damaged far in excess of $25,000.  The court's real problem with the settlement was it resulted in a judgment Kannaday used to pursue a bad faith claim.  However, even if the settlement had not occurred, GEICO would have been in the same position.  The tort claim would have gone to trial and judgment would have been entered in favor of Kannaday.  Kannaday would have asserted the bad faith claim in connection with a garnishment action.  There was <u>no</u> prejudicial interference with the ability to defend.

48

Further, as discussed in Point I(B), GEICO breached the contract first, relieving the Administrator of his obligation to perform under the policy. *First Hays Banshares, Inc.*, 769 P.2d at 1189 (Kan.). Once the insurer breaches the policy, the breach is irreparable. *Smith v. Blackwell*, 791 P.2d 1343, 1346-47 (Kan.App. 1990). GEICO irreparably breached the policy by failing to act in good faith and without negligence long before the Administrator signed the settlement agreement. The court erred in concluding the Administrator breached the cooperation clause, relieving GEICO of responsibility under the policy.

**V.     The district court erred in refusing to enter judgment in favor of Kannaday, including post-judgment interest, pre-judgment interest and attorneys' fees.**

**A.     Standard of Review**

In an appeal from a bench trial, the Court reviews the lower court's legal conclusions de novo. *Holdeman*, 572 F.3d at 1192 (citation omitted). This issue was raised by Kannaday in her proposed conclusions of law (Aplt. App. 1582, 1625). The court found for GEICO (Aplt. App. 1667, 1701).

**B.     Discussion**

As set forth above, the court erred in refusing to apply the judgment rule to this case. That determination allowed the court to conclude there was no conflict of interest between the insured and GEICO and GEICO did not breach its duty of good faith or act negligently in defending the insured and conducting settlement negotiations. The court erred in finding the Administrator did anything to cause substantial prejudice to GEICO's ability to defend itself when the Administrator took action to protect the Estate.

49

Therefore, the court erred in entering judgment in favor of GEICO. Kannaday was entitled to judgment in her favor, plus post-judgment interest, pre-judgment interest and attorneys' fees pursuant to K.S.A. 40-908.

## CONCLUSION

The district court erred in concluding GEICO had acted in good faith and without negligence in defending the Estate and conducting settlement negotiations. The findings are unsupported by the record and the court's mistake is clear. The court erred in failing to apply the judgment rule to this action; the judgment rule applied, even if the court didn't like the outcome. The court erred in finding the Administrator breached the cooperation clause of the policy, relieving GEICO of all responsibility. GEICO did not prove substantial prejudice to its ability to defend itself. Therefore, the court erred in entering judgment in favor of GEICO and refusing to award Kannaday attorneys' fees.

Kannaday requests this Court reverse the district court's rulings set forth in its Memorandum and Order and judgment (Aplt. App. 1667-1703) and enter judgment in favor of the Kannaday and against GEICO in the amount of $5,737,922.27, which includes interest through July 16, 2014, plus interest accumulating at the rate of $1,294.07 per day until judgment. On May 23, 2012, judgment was entered in favor of Kannaday and against the Estate (District Court of Wyandotte County, Kansas), in the amount of $4,723,368.60. That is a liquidated and certain sum and Kannaday is entitled to prejudgment interest in this case pursuant to K.S.A. 16-201 at the rate of 10%. Kannaday asks this Court to remand this case back to the district court to award attorneys' fees pursuant to K.S.A. 40-908.

## ORAL ARGUMENT IS REQUESTED

Kannaday requests oral argument because she has alleged a large number of errors by the district court and numerous circumstances where the court failed to follow established precedent of the Kansas Supreme Court and Court of Appeals by taking the position that the precedents represent mere "theoretical hypothesis" and do not apply as a "practical matter" under the "real-world" circumstances of this case.  Appellant suffered an incomplete spinal cord injury and the damages were assessed after a contested trial in the amount of almost $5,000,000.00.  Kannaday needs every opportunity to explain her case and answer questions that might be asked of her counsel.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e) and 32(a)(7)(A) because it contains 13,621 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Tenth Circuit Rule 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the font size requirement of Tenth Circuit Rule 32(a) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 13 size font, Times New Roman style.

*/s/ Kathryn M. O'Shea*
Kathryn M. O'Shea  KS # 23583

51

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, and according to the program are free of viruses.

/s/ Kathryn M. O'Shea _____
Kathryn M. O'Shea  KS # 23583

52

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing **Appellant's Principal Brief** with

attachments was electronically filed and served through the CM/ECF system on

December 22, 2014 to:


Lee Smithyman
Smithyman & Zakoura, Chtd.
750 Commerce Plaza II
7400 W. 110th Street
Overland Park, KS 66210
lee@smizak-law.com

**ATTORNEY FOR APPELLEE/CROSS-APPELLANT**


*/s/ Kathryn M. O'Shea*
Kathryn M. O'Shea  KS # 23583